# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
* * *

| | |
|---|---|
| PN II, INC. dba PULTE HOMES OF NEVADA, and PULTE HOME CORP., <br><br>Plaintiffs, <br><br>v. <br><br>ASPEN MANUFACTURING, LTD., and DOES 1-100, <br><br>Defendants. | Case No. 2:14-cv-01382-APG-VCF <br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br>(ECF No. 44) |

Plaintiffs PN II, Inc. and Pulte Home Corporation ("Pulte") were the developer and general contractor for residential housing communities in Nevada and California. Construction included installation of heating, ventilation, and air conditioning (HVAC) systems allegedly manufactured in part by defendant Aspen Manufacturing, Ltd. (Aspen). Homeowners made warranty claims to Pulte concerning the HVAC systems, including complaints that the systems were not properly cooling their homes or were leaking and causing damage.

Pulte investigated the complaints, and made and paid for repairs and associated damage. Pulte sued Aspen to recover its expenses. Pulte alleges claims based on equitable indemnity, contribution, breach of the implied warranties of merchantability and fitness for a particular purpose, negligence, and strict products liability.

Aspen moves for summary judgment on all of Pulte's claims. Aspen contends the negligence and strict products liability claims are barred by the economic loss doctrine. With respect to the equitable indemnity claim, Aspen argues that Nevada law requires a special relationship between the parties and blamelessness on the part of the party seeking indemnity, neither of which is present here. With respect to the implied warranty claims, Aspen argues that it validly disclaimed both implied warranties. Aspen argues that the contribution claim is barred

because Pulte has not met the statutory requirement of extinguishing its liability to the homeowners.

Pulte responds the economic loss doctrine does not apply, or in the alternative that there is a genuine dispute about whether it applies. With respect to the equitable indemnity claim, Pulte contends that a special relationship is unnecessary because Aspen has a duty to protect Pulte pursuant to the implied warranty of merchantability. As to the implied warranty claims, Pulte argues that Aspen's disclaimer of the implied warranty of merchantability did not meet the statutory requirements, and that there is a genuine issue of material fact as to whether the products at issue were covered by the disclaimer. Finally, with respect to the contribution claim, Pulte argues that there is a genuine dispute as to whether Pulte extinguished Aspen's liability to the homeowners in its settlement agreements with the homeowners in California.

The parties are familiar with the facts in this case. I will not repeat them here except where necessary. I grant Aspen's motion for summary judgment on all of Pulte's claims.

I. **ANALYSIS**

Summary judgment is appropriate if the pleadings, discovery responses, and affidavits demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and draw reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenck, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### a. Breach of implied warranties

Under Nevada law, "[u]nless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Nev. Rev. Stat. § 104.2314. In addition, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." *Id.* § 104.2315. These implied warranties of merchantability and fitness for a particular purpose can be excluded or modified under Nevada Revised Statute § 104.2316:

> 2. Subject to subsection 3, to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."
>
> 3. Notwithstanding subsection 2:
>
> (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . ."

Aspen argues that Pulte's claims for breach of the implied warranties of merchantability and fitness for a particular purpose fail because Aspen validly disclaimed these warranties under this statute. The warranty on the coils included a disclaimer that stated: "ASPEN MAKES NO WARRANTY, EXPRESS OR IMPLIED, OF FITNESS FOR ANY PARTICULAR PURPOSE . . . ." ECF No. 44, Ex. 1 (capitals in original). Pulte admits that it "considers the language of the warranty to likely have been sufficient to disclaim the implied warranty of fitness for a particular purpose." ECF No. 49 at 30 n.12. Thus there is no dispute that Aspen validly disclaimed the implied warranty of fitness.

The warranty also states that Aspen "warrants to its direct purchasers that Coils sold to them shall be of a merchandisable quality, free of defects in material or workmanship, under normal use and service for a period of five (5) years." ECF No. 44, Ex. 1. Further, it states that "THE FOREGOING IS IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED . . . ." *Id.* Aspen argues that under Nevada Revised Statute § 104.2316(3), this disclaimer is sufficient to exclude the implied warranty of merchantability as it "qualifies as language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." ECF No. 44 at 15–16 (internal quotation omitted).

Pulte argues that there is no reference to the implied warranty of merchantability as required in Nevada Revised Statute § 104.2316(2). Alternatively, Pulte argues that under section 3 of the provision, circumstances here "indicate otherwise" because Aspen "explicitly recognizes a warranty of merchantability." ECF No. 49 at 29. Aspen responds that its express warranty regarding merchantability does not affect its disclaimer of implied warranties.

Official Comment 6 to this statute notes that the section 3 "exceptions to the general rule [of section 2] are common factual situations in which the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is being excluded." In *Scaffidi v. United Nissan*, the district court held that a window placard on a car stating that it was sold "AS IS – NO WARRANTY" effectively disclaimed the implied warranty of merchantability. 425 F. Supp. 2d 1172, 1186 (D. Nev. 2005). The court held that the term "as is" sufficiently called the buyer's attention to the exclusion of implied warranties, even though no mention was explicitly made of the implied warranty of merchantability. *Id.* In this case, Aspen's disclaimer was even clearer as to the exclusion of implied warranties, although it too did not explicitly mention the implied warranty of merchantability. Aspen's express warranty of merchantability does not negate its disclaimer of all implied warranties. Therefore, Aspen also validly disclaimed the implied warranty of merchantability.

Pulte also argues that there is a genuine dispute over whether these disclaimers apply to the component parts at issue. Aspen admits that it changed the disclaimer for later products. However, Aspen submitted a declaration by its Vice President of Operations stating that the warranty and disclaimer (ECF No. 44, Ex. 1) were "applicable to the coils and drains at issue in this case," were "in effect from October 1, 1993 through April 2007," and "accompanied all product that left Aspen's manufacturing facility during that time period." ECF No. 44, Ex. 7. Aspen also produced a spreadsheet created by one of Pulte's experts listing the close of escrow dates of the damaged homes. *Id.*, Ex. 3. Pulte responds by pointing to three homes that sold within a few months after the disclaimer was ostensibly changed.

Pulte has not produced any evidence to counter Aspen's declaration that all of the products at issue were subject to the original disclaimer. Pulte's evidence merely shows that three houses were sold a few months after the disclaimer changed; but that does not show that the HVAC system components in those houses were installed under a different disclaimer. Pulte has produced no evidence that is "significantly probative" as to call into question Aspen's declaration that the disclaimer applies to the products at issue in the case. *See Anderson*, 477 U.S. at 249–50. Pulte has therefore not met its burden to establish a genuine issue of material fact. I grant the defendant's motion for summary judgment as to the claims for breach of the implied warranties.

    **b. Contribution**

The right to contribution in Nevada is a statutory right. *See* Nev. Rev. Stat. § 17.225. Under that statute, "the remedy of contribution allows one tortfeasor to extinguish joint liabilities through payment to the injured party, and then seek partial reimbursement from a joint tortfeasor for sums paid in excess of the settling or discharging tortfeasor's equitable share of the common liability." *The Doctor's Co. v. Vincent*, 98 P.3d 681, 686 (Nev. 2004). "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury . . . is not extinguished by the settlement . . . ." Nev. Rev. Stat. § 17.225(3). A tortfeasor seeking contribution following a settlement "must explicitly extinguish

the liability of the joint tortfeasor from whom contribution is sought as part of the settlement." *The Doctor's Co.*, 98 P.2d at 690.

Aspen argues that Pulte's repair of the homes can be considered a pre-judgment settlement and that Pulte "has not produced any releases" that "explicitly extinguished the homeowners' rights against Aspen." ECF No. 44 at 12. In response, Pulte argues that there is a genuine issue of material fact as to whether the settlement releases between it and the homeowners in the California residences extinguished Aspen's liability. Those release agreements provide that the homeowner "assigns to Pulte all claims and rights . . . against the manufacturers, suppliers and installers of the original HVAC condensate coil and drain pan and all of its component parts." ECF No. 49, Ex. 2.

The assignment of claims from the homeowners to Pulte did not extinguish Aspen's potential liability. Instead, it simply shifted who would be able to sue Aspen. Therefore, Pulte is not entitled to recover contribution from Aspen, as Aspen's liability was not explicitly extinguished by the settlement between Pulte and the homeowners. I therefore grant Aspen's motion for summary judgment on the contribution claim.

### c. Negligence and strict products liability

Aspen argues that Pulte's negligence and strict liability claims are barred by the economic loss doctrine. The economic loss doctrine is "a judicially created rule" that "bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'" *Terracon Consultants Western, Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 85–86 (Nev. 2009). "[P]urely economic losses are not recoverable in tort absent personal injury or property damage." *Id.* at 87. Aspen argues Pulte is seeking to recover the cost of repairing houses so its only damage is economic. Aspen argues that Pulte "incurred expense in making repairs to the homeowners' property, [but] it did not suffer any damage to its own property," nor did it suffer personal injury. ECF No. 44 at 6. Pulte argues that it has suffered property damage, or at least there is a genuine issue of material fact about whether it did.

I grant Aspen's motion because Pulte did not own any of the houses in question at the time of the damage.[1] In *Terracon*, the Supreme Court of Nevada noted that the lack of "possessory or proprietary interest" in the property damaged and lack of "accompanying personal injuries" prevented the plaintiffs from recovering in tort. 206 P.3d at 87 (citing *Local Joint Exec. Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 651 P.2d 637, 638 (Nev. 1982) (per curiam)); *see also Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309 (stating the general rule that a party cannot recover purely economic losses in tort without suffering personal injury or damage to its property). Pulte did not own the houses that were damaged and therefore did not suffer harm to its property.

Even though Pulte claims in its complaint that it is suing Aspen in tort standing in the shoes of the homeowners, the tort claims still fail as a matter of law. "Purely economic loss is generally defined as the loss of the benefit of the user's bargain . . . ." *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (internal quotations omitted), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004). The homeowners purchased a home with an HVAC unit, not the HVAC unit itself. In *Calloway*, the Supreme Court of Nevada held that "when a heating and plumbing system damages the building as a whole, the building has injured itself and only economic losses have occurred." *Id.* at 1268. Similarly, when an installed HVAC unit causes damage to the home, this is considered purely economic loss. *See Tharaldson Fin. Grp., Inc. v. AAF McQuay, Inc.*, 2014 WL 4829649, at *3 (D. Nev. Sept. 30, 2014) ("[W]hile it may be a question of fact whether some products installed in buildings retain their separate identity as

---

[1] Pulte argues that Aspen has not met its burden because it raised the economic loss doctrine as an affirmative defense but "presented no evidence in support." ECF No. 49 at 6. However, Aspen's motion relied on the allegations in Pulte's complaint. The allegation that Pulte was not the homeowner is a judicial admission that binds Pulte. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *see* ECF No. 1 at 2, 3 ("Homeowners in the Communities complained to Plaintiffs that water was leaking . . . causing damage to their home . . . ."). Pulte produces no evidence that it owned the homes in question. In fact, Pulte specifically argues that it is bringing the claims as the "**general contractor/builder** of the damaged residences – not the owner of the residences." ECF No. 29 at 12 (emphasis in original); *see also* ECF No. 44, Ex. 3 (listing the homes and homeowners, none of whom is identified as Pulte).

products, in Nevada, an installed HVAC unit is an integrated and integral part of the building, and damage to the [p]roperty caused by the HVAC is purely economic loss.").

Thus, Pulte has failed to show that it has suffered personal injury or property damage. It incurred only the costs to repair the homeowners' homes, a purely economic loss for which it cannot recover in tort. I therefore grant the defendant's motion for summary judgment on Pulte's negligence and strict products liability claims.

### d. Equitable indemnity

Equitable indemnity "allows a defendant to seek recovery from other potential tortfeasors" only when a defendant "who has committed no independent wrong, is held liable for a plaintiff's loss caused primarily by another party." *Pack v. LaTourette*, 277 P.3d 1246, 1248–49 (Nev. 2012) (quotation omitted). Equitable indemnity "is not usually available between joint tortfeasors." *Black & Decker (U.S.), Inc. v. Essex Grp., Inc.*, 775 P.2d 698, 699 (Nev. 1989). An exception to this rule exists if there is "a preexisting relationship between" the joint tortfeasors "or some duty on the part of the primary tortfeasor to protect the secondary tortfeasor." *Pack*, 277 P.3d at 1249 (quotation omitted); *Black & Decker*, 775 P.2d at 700 (holding an implied warranty of merchantability created a duty supporting an equitable indemnity claim). Even under this exception, if a party is "actively negligent," it "has no right to indemnity from other tortfeasors." *Pack*, 277 P.3d at 1249.

Aspen argues that it had no preexisting relationship with Pulte because it had no contract with Pulte and "no detailed knowledge of what happens after it sells its products to a supplier/distributor." ECF No. 44 at 8. Aspen also argues that Pulte's own expert establishes that Pulte was at least partially at fault, and so it cannot recover.

Pulte argues that a relationship is not necessary, as Aspen owes it a duty based on the implied warranty of merchantability under *Black & Decker*. Pulte also disputes Aspen's characterization of the expert testimony and whether Pulte was actively negligent such that it could not recover.

Pulte does not contend that it has a preexisting relationship with Aspen. Instead, Pulte argues that it has a right to indemnity because Aspen owes Pulte a legal duty pursuant to an implied warranty of merchantability. But Aspen validly disclaimed the implied warranty of merchantability regarding the products at issue. Thus, Aspen does not owe Pulte a duty based on that implied warranty and Pulte has offered no other evidence of a duty or relationship that would support its claim to equitable indemnity. Pulte has not established a genuine issue of material fact regarding its right to indemnification from Aspen. Therefore, I grant Aspen's motion for summary judgment on this claim.

## II. CONCLUSION

IT IS THEREFORE ORDERED that the defendant Aspen Manufacturing Ltd.'s motion for summary judgment **(ECF No. 44) is GRANTED**. The clerk of court is directed to enter judgment accordingly.

DATED this 28th day of September, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE